## Wilson, et al. v. Reynolds, et al.

(Decided May 29, 1913.)

### Appeal from Todd Circuit Court.

Deeds—Reformation—Mutual Mistake.—In an action to reform a deed on the ground of a mutual mistake of the parties, evidence examined and held sufficient to support the decree of reformation.

SELDEN Y. TRIMBLE and TRIMBLE & BELL for appellants.

S. WALTON FORGY, J. R. MALLORY and W. B. REEVES, JR., for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On November 1, 1899, William Perkins and his wife, Jennie Perkins, conveyed to J. T. Halsell and his wife, Willie Halsell, a certain tract of land in Todd County, Kentucky. The consideration was the natural love and affection the grantors had for their daughter, Willie Halsell, and the sum of $7,000. The deed further provided that the grantees were to board William Perkins and his horse, free of any charge, for and during his natural life, and that one room in the house was reserved to him for his use and occupancy so long as he lived. This obligation on the part of the grantees was made a charge on the land and a lien was retained to secure its performance.

On January 1, 1902, J. T. Halsell and his wife, Willie Halsell, and William Perkins, then an unmarried man, as parties of the first part, conveyed the land in question to C. C. Reynolds, as party of the second part. The consideration was $9,545.76, of which $4,927.76 was paid in cash, and the balance represented by certain notes. Perkins joined in the deed for the purpose or releasing his lien. He also made a written release of his lien on the margin of the record of the deed from him to Halsell and wife. The granting clause of the deed was as follows:

"Hath bargained and sold, and do by these presents now sell, alien and convey unto the said second party, his heirs and assigns forever, and should B. E. Reynolds, wife of the said C. C. Reynolds, survive him, the title to the property hereby conveyed shall be and remain in her during her natural life, and at her death to be divided equally between our heirs."

On December 1, 1910, C. C. Reynolds and wife conveyed the land in question to Fred B. Young and his wife, Janie Young. The consideration was $5,418.75 cash, and two notes for a like amount, payable in one and two years. Young attempted to borrow money on the land to pay off the lien notes. The question was raised as to the character of title C. C. Reynolds took under his deed from Halsell and wife and Perkins.

C. C. Reynolds brought this action for the purpose of having the deed which he received from Halsell and wife and Perkins reformed. In the action Mrs. Reynolds, the heirs of William Perkins, Halsell and wife and their children, as well as the children and infant grandchildren of Reynolds and wife, were made parties. Some of the parties were non-residents and some infants, but all of them were properly brought before the court. The petition alleged that it was the intention of Halsell and wife and William Perkins, and of the plaintiffs, C. C. Reynolds and his wife, B. E. Reynolds, to vest a perfect, fee simple title in C. C. Reynolds and his heirs and assigns forever, but with the provision that if said C. C. Reynolds should not sell or dispose of same prior to his death, and if his wife, B. E. Reynolds, should survive him, she should then have a life estate in said land, and after her death said land should descend to the heirs of C. C. Reynolds. It is further alleged that it was not the intention of the parties to the conveyance to give the plaintiff, B. E. Reynolds, a life estate in said land, unless she should survive C. C. Reynolds and he should fail to

dispose of same prior to his death, and that it was never the intention of the parties to said deed that the land should, in any event, revert to or be divided between the heirs of the grantors; that the habendum clause of the deed above set out, which apparently gave to B. E. Reynolds a life estate in the property whether the property was disposed of or not, and which directed the land, upon her death, to be divided between "our heirs," was the result of a mutual mistake of the parties and a mistake on the part of the draughtsman. Proof was heard and on final hearing the chancellor directed the deed to be reformed so as to carry out the intention of the parties. From that judgment the infant defendants, by their guardian ad litem, prosecute this appeal.

In view of the fact that every person having an interest in the land, either directly or indirectly, was before the court, it is unnecessary to determine whether or not some of them were proper parties. Perkins himself merely joined in the deed to Reynolds for the purpose of releasing his lien on the land. All the adult parties to the suit entered their appearance and consented that the deed be reformed. The depositions of C. C. Reynolds and Thomas Pepper, a banker who drew the deed, were taken. They both testified that it was the purpose and intention of the parties to the deed to vest in C. C. Reynolds a fee simple title, with full power and authority to sell and dispose of the land in question, and that the deed was executed with the understanding that this was the case. It was never the purpose of the parties that the land should revert to or be divided between the heirs of the grantors. Mr. Pepper simply drew the deed in accordance with the direction of Mr. Reynolds and inadvertently placed a limitation on the power of said Reynolds to sell and dispose of the land, and further used the word "our" instead of the word "his." In doing this he made a mistake and did not represent the true intention of the parties. The evidence further shows that Reynolds and wife were not related to Perkins or Halsell and wife. The land was not given to Reynolds. He paid $9,545.76 for it. Aside from the direct testimony on the question, this fact of itself is sufficient to show that the grantors received full value for the land, and never intended to provide for a reversion to their heirs. The power of a court of equity to reform a deed which, because of a mutual mistake of the parties, does not express their true intention, has been long recognized. In this

case the evidence of the mutual mistake is clear and convincing and fully supports the finding of the chancellor. Judgment affirmed.